# JAMES GRAY *against* ALEXANDER BRACKENRIDGE and HUGH DAVIS.

### IN ERROR.

On an issue being joined, to ascertain the amount due upon a judgment, given as security, the Court has a right to order, that the plaintiff's account or statement of the amount due to him, shall be considered as *prima facie* evidence of his claim: and it is not error to instruct the jury, that the burden of proof falls upon the defendant, to shew payment of the debt, or why it should not be paid.

In such a case, the plaintiff, being an attorney at law, has a legal right to recover from the defendant a *quantum meruit* for his professional services.

The loan of credit is a matter of business, and as legitimate a subject of contract and compensation as any other consideration.

This cause came up by writ of error to the Common Pleas of Allegheny county.

To April Term, 1823, the plaintiff in error, *James Gray*, confessed a judgment to the defendants in error, who were plaintiffs below, for the sum of $14,000. On the 17th August, 1827, the defendant obtained a rule on the plaintiff, *A. Brackenridge*, to shew cause why an issue should not be awarded, to ascertain the actual amount due upon this judgment. On the same day *Brackenridge* filed an account of moneys advanced, services rendered, and responsibilities assumed for the defendant, to secure all which, the said judgment was given. At a subsequent period an issue was directed, and the cause was tried.

All the errors assigned in this Court were to the opinion of the Court below, which, together with the opinion of this Court, will as fully explain the case, as it is in the power of the reporters to do, not having been present at the argument, which was at September Term, 1829.

SHALER, President.—A judgment having been given by the defendant to the plaintiff, for $14,000, the reasonable presumption, as between the parties would be, that it was given for a valid consideration; and when the rule was taken to shew cause why the judgment should not be opened, had the decision of the question solely rested on the affidavit of the defendant, not as it was by the previous affidavit of the plaintiff, no further proceedings could have been had upon the case, consistently with the rules that have heretofore governed the Court; but the affidavit of the defendant having been remotely sustained by circumstances, as sworn to by a disinterested party, it became our duty to make such order, as would enable the defendant to shew the payment of the moneys, for the security of which, the judgment was held.

The Court, therefore, directed an issue to ascertain several facts,

(James Gray *v.* Alexander Brackenridge and Hugh Davis.)

the greater part of which, by the agreement of the parties them-selves, during the trial, are now excluded from your inquiry.

It has been observed before, that the entry of a judgment, as between the parties themselves, imports a strong presumption that it is given for a sufficient consideration. Few persons feel an in-clination to give a mere voluntary judgment.

If such judgment is entered in fraud of creditors, though void as to them, *it is binding as between the parties.* A defendant could not get rid of it, although plenary proof existed, that it had been given for the promotion of fraud. But when a judgment is given for a fair consideration and honest purpose, should the re-lation of the parties be changed, or should the contingencies it was intended to meet, fail to take effect, it becomes a matter of equity to examine into the grounds of the judgment, and if all its objects have been answered, or the contingency upon which it is predicated, can never happen, it is the duty of the Court to set aside the judgment.

But it is to be observed in such a case, that the judgment itself remains *prima facie* evidence of the amount due, until the defen-dant impeaches it by full proof.

The plaintiff has already the most solemn recognition upon record of the justice of his claim. The burden of proof, in the attempt to reduce the extent of its lien, is necessarily thrown upon the defendant. The plaintiff exhibits his judgment; the de-fendant is then to prove his payments. This must ever be the course, or the most miserable injustice must be done to a judgment creditor.

The Court, in relation to this issue, has been governed by this principle; it is the doctrine of safe precedents, and must be ad-hered to.

It was therefore directed, that the account of *Mr. Brackenridge* should be received as *prima facie* evidence of the amount due upon the judgment, and that the defendant should have leave to prove payment, or give evidence, which in point of justice and equity, would amount to payment of the debt.

The question then for the jury to determine is, not whether the plaintiff has given evidence of his claim, apart from his account, as filed; but whether the defendant has given satisfactory proof of payments beyond those admitted by the plaintiff.

The addition to the account, as it is laid before you by the plain-tiff, must be considered as equally conclusive upon the defendants, under the agreement at the bar, with the original account filed; and must be met by the defendant upon similar principles.

From the general ground on which this case must be decided, I proceed to those principles, that are applicable to the particular nature of accounts.

(James Gray *v.* Alexander Brackenridge and Hugh Davis.)

If an account be presented to a party, and he permits a length of time to elapse, before he returns it, or objects to it, he, by such delay, admits the general tenor of the account rendered; and it is sufficient for a plaintiff, when he comes into court, to shew, that the account was left with the defendant for a reasonable time, and not returned with objections.   If the defendant chooses to dispute or falsify, he may; but it is necessary that he should give, not slight, but strong, evidence of error or mistake, or the account must be taken against him as rendered.

If small errors are detected in an account so rendered, without timely objection, they form no ground from which to presume the rest of the account, or any items in it, are incorrect.   No jury, for slight reasons, would be warranted in such a presumption, it would be against sound policy and contravene justice.

If gross errors are detected, a different rule might prevail; but here, in the case of great errors in an account, when a judgment had been confessed upon it, the discovery of such errors could not authorize a jury in presuming that other items were erroneous. There is one matter which has been warmly contested in this case, which calls for an expression of our judicial opinion.   I refer to the item of charge for professional services.   There is no confidence subsisting out of the domestic relations, of a nature so delicate, as that between counsel and client.   In all countries, it has been considered as most honorable, and so often attended with circumstances requiring, not only consummate skill and undeviating integrity, but great prudence and profound secrecy.   It must therefore frequently occur, that acts of the highest utility are done by a counsel or attorney, when the faith reposed in him renders it impossible that the act of the counsel can be known to any other than his client.   It is difficult to put a monied estimate on such exertions of talents as has been exhibited on the occasion now before us, although there are cases in which a remuneration may be adapted to the occasion, to the talents, to the legal knowledge of counsel.   But when to a talent for conducting business, with reasonable skill in court, is superadded the persevering industry and attention necessary to prepare a cause out of court, and where the person who possessed these combined talents, has them called into requisition for a series of years, by a party concerned in an extensive field of litigation, and when, in addition to this most arduous employment, the aid of his purse, credit, talent for business and finance is required, I know how difficult it must be for you to fix a compensation suited to the importance of services so constantly and faithfully rendered.

I think the enumeration of cases in which the plaintiff was engaged, forms a very inconsiderable bases for this estimate; but if you were to apply to each of them the ordinary fees of counsel,

(James Gray *v.* Alexander Brackenridge and Hugh Davis.)

it strikes me it would transcend considerably the compensation-charged by plaintiff for his professional services.  All the facts connected with the point are for your determination.

As to the charge for services rendered in the Pentland case, and other cases involving the same principle, the only question that can arise, is not the justice, but the reasonableness of the charge.

In the mere loan of money, the law has fixed the amount of compensation to be derived from the loan; but there are certain advances, for which mercantile custom has fixed a compensation, dependent upon the nature of the transaction, and the extent of the risk; and for the hypothecation, if I may so call it, of personal credits, value must be ascertained either from known custom, the circumstances of the peculiar case, or the compact of the parties.   When A lends his credit to B, it is to him of as much moment as an advance of money.   It is a matter of business, a fair subject of compensation, it affords a claim, as just as any other consideration; the value of such credit, in the mercantile world especially, depends upon the character, standing and condition of the party giving it; and as it is more or less valuable to the party to whom it is given, so ought the compensation to be governed by the greater or less degree of advantage derived to the party. The reasonableness of the charge is, in the present case, a fair subject for the consideration of the jury.

Equity regards not so much the manner of doing a thing, as the thing done.   It inquires what was the advantage proposed? Has the party desired the advantage?  If so, the compensation proposed must be paid.   Thus, in the case of the *Wright* claim, if the advancement of the money was the object in view, if the *gist* of the matter in the *McKillip* case, and in reference to the *Doran* corner, was securing the property to the defendant, and this was done through the credit, exertions, or advances of *Brackenridge;* and if in the *McMahon* affair the point of possession was obtained, the compensation should be paid, although the peculiar means devised were not those originally intended to be pursued by the parties.

I put these cases by way of illustration to the rule.   The question as to the late charge of compensation for these particular services is, as the services themselves are, matters of consideration for the jury; and whether this matter is sufficiently explained, they will determine by their verdict.

*Burke* and *Kennedy* for plaintiff in error.

*Fetterman* and *Baldwin* for defendants in error.

The opinion of the Court was delivered by

SMITH, J.—The plaintiff in error, had by virtue of a warrant of attorney confessed a judgment to the defendants in error, of

(James Gray *v.* Alexander Brackenridge and Hugh Davis.)

April term, 1823, for the sum of 14,000 dollars. In 1827 certain measures were taken to ascertain the amount due on this judgment, and a verdict and judgment were rendered on the 30th of April, 1828, in favour of the plaintiffs for 1,150 dollars. On the trial, by agreement of the parties, the controversy was reduced to a mere matter of account; in the investigation of which, however, much time was consumed, and some important principles drawn into discussion. It was admitted by the plaintiffs, that the judgment had been given by the defendant for responsibilities and advances to be incurred, and made, after the entry of the same, as well as for other demands ; and an account was exhibited by them, of the amount due, under the judgment and secured by the same. In this account, one item of charge was, for professional services, rendered by one of the plaintiffs, *( Mr. Brackenridge,)* as counsel and attorney of the defendant, and another was for lending his credit to the defendant to obtain loans ; on which items, as well as on other matters, the Court charged in favour of the plaintiffs. The defendant, having excepted to this charge, has assigned the following errors.

1. It being admitted by the plaintiffs, that this judgment was given by the defendant for responsibilities and advances to be incurred, and made after the entry of the judgment, the Court erred in charging the jury that the plaintiff's account of such advances was to be taken as *prima facie* correct.

2. The Court erred in charging the jury in substance, that any claims or accounts, which the plaintiff may have presented, in addition to those contained in his account as filed, should be taken by the jury as *prima facie* evidence of such claims or accounts ; and the Court also erred in permitting to go to the jury an account of the plaintiffs, containing items which occurred since the issue directed in this case.

3. The Court erred in charging the jury in substance, that they were at liberty to allow the defendants in error a *quantum meruit* for his professional services, beyond the fees allowed by act of assembly

4. The Court erred in charging the jury in substance, that a man may lend his credit to another, and though he has no money to pay, or advance, he may charge and be allowed beyond *six per centum* for so doing.

The Court were right in admitting the plaintiff's account as *prima facie* evidence. It had been in fact, filed long before the trial, and was on record, in consequence of directions given, when the issue was formed to this effect, that it should be received as *prima facie* evidence of the amount due on the judgment ; but

(James Gray *v.* Alexander Brackenridge and Hugh Davis.)

that the defendant should be at liberty to prove payments, or give in evidence such matters, which in equity and justice might amount to payment of the plaintiffs' demand. The question therefore simply was, whether the defendant had given proof of payments, for which the plaintiffs had not credited him, or of circumstances constituting an equitable defence. So in regard to the additional items, mentioned in the second error, they must be considered as conclusive on the defendant, (in consequence of his agreement made at the trial) as well as the original account filed, unless he can answer them by a similar defence. And this may suffice in regard to the first and second errors.

The third error assigned, has been warmly contested here, as the point involved in it, was on the trial. I allude to the charge of compensation for professional services. We have duly considered the matter, and a majority of the Court is of the opinion, that under the circumstances, the charge of the Court was correct. We must not forget the real state of the question before the Court and jury. Professional services had been rendered to the defendant at his special instance and request. For a series of years, and in an extensive course of litigation, causes were prepared out of Court, and were tried in Court, by one of the plaintiffs. As to these facts there was no dispute. The account being filed and received as evidence of the demand, the defendant, under the agreement, was called on to show payment, or to show that in equity and conscience, it ought not to be paid. Of actual payment, there was no pretence; and we cannot perceive, in the only fact urged,—that the services were those of a counsellor at law,— any thing which should, in good conscience, debar the plaintiffs from a reasonable compensation. Had the defendant paid for those services, no one could contend, that he ever could recover back the amount, although no such directions were given by the Court, and no such agreement were made by the parties, as existed in this case. The answer would have been, you cannot recover, because the defendant has honestly received and may fairly retain the money. *Morris* v. *Tarin,* 1 *Dall.* 147. I regard this claim, under the circumstances, as standing upon as just a footing, as if there had been an express verbal promise to pay, or a promissory note given for the same services by the defendant. As the consideration of such a note, was declared in *Mooney* v. *Lloyd,* to be sufficient to support an action upon it, so, there can be no doubt, it is equally good, on the present issue, to sustain this item of the account against the objection which has been urged; for so far from its being against equity to demand payment of the defendant, it is manifestly unjust and inequitable in him to refuse it. We say therefore that the defendant failed

(James Gray *v.* Alexander Brackenridge and Hugh Davis.)

in showing, that he ought not, in conscience, to be called upon to pay ; and that the Court below committed no error in that part of the charge.

As to the last error assigned:—The law certainly has fixed the compensation to be paid for the loan of money ; but I take it, to be equally well settled that by the custom of merchants, for advances or credits made by one to another, a compensation may be allowable, by express contract ; always depending, it is true, upon the nature of the transaction and the risk run. The charge of the Court, in our opinion, was in this particular also correct ;—for if A lends his credit to B, it is to him of as much moment as an advance of money, he obtains money by it ; it is a matter of business, fairly to be compensated, and affords as just a claim as any other consideration. The jury must always say, whether the charge be reasonable or not. We cannot discover any error in this case, and therefore affirm the judgment.

ROGERS, J.—Dissented on the ground that the decision overruled that of *Moony* v. *Lloyd*, 5 *Serg. & Rawle*, 452, which, although he did not approve, yet he was for adhering to it.

GIBSON, C. J.—Expressed his satisfaction in over-ruling that case.

Judgment affirmed.